UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF
MICHIGAN SOUTHERN DIVISION

| | |
|---|---|
| KEVIN A. GARY | Case No. 2:17-cv-10544-GAD-EAS |
| Plaintiff, | Honorable Gershwin A. Drain |
| | Magistrate Judge Elizabeth A. Stafford |
| v. | |
| TRUEBLUE, INC.,d/b/a/ LABOR READY, INC., d/b/a/ PEOPLEREADY, INC | |
| Defendant(s) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

NOW COME Plaintiff, Kevin A. Gary, Pro Se, pursuant to Fed. R. Civ. 56 respectfully move this Court for an Order granting summary judgment and related with respect to Count I of the Complaint in this matter for the reasons stated in the attached supporting Brief. This case is **ripe** for a decision, and Plaintiff submits this Memorandum of Law in Support of its Motion for Summary Judgment.

**I. FACTUAL BACKGROUND**

Plaintiffs begin working for Defendants as early as 2011. At the time, Plaintiff was and has been in a financial hardship. Plaintiff was trying to keep afloat, by working jobs as best he could. In 2011 Plaintiff began receiving text messages from the Defendants about jobs offers around the metro Detroit area. The messages were sent from Short Messages Service Code (SMS) with a #42800, belonging to the Defendants. The TCPA's consent requirement applies to short message service text messages ("SMS" or "text message") in addition to voice calls. See...*2003 TCPA Order,* 18 FCC Rcd at 14115, para. 165; *see also Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) At some point, Plaintiff realized that he was being bombarded with text messages that used up minutes on his cellphone plan. In order to put an end to the text messages, Plaintiff made valid attempts to receive notices about jobs through other means besides text messages. The text messages never stopped and continued to use up Plaintiffs minutes. (See Exhibit J) Since filing this lawsuit, Plaintiff financial situation has gotten worse, because the Defendants retaliated against Plaintiff, and fired Plaintiff as a result of this lawsuit.

## II. INTRODUCTION

Defendants, TRUEBLUE, INC., d/b/a/ LABORREADY INC., d/b/a/ PEOPLEREADY, INC., (hereinafter "TLP") violated the Telephone Consumer Protection Act (TCPA) 47 U.S.C. § 227et seq. Plaintiff initially knew that he had

2

received over 1400 text messages from the Defendant. (Comp ¶ 19), but thru discovery Plaintiff has been texted over five-thousand-six hundred (5,600) times. (Defendant Productions, Exhibit D, 1-184)

Plaintiff made a plethora of attempts to cease unwanted text messages on his cellphone that violated his privacy and used up his data plan causing additional charges. Plaintiff even physically went into the local branches around the Detroit area and told several representatives that he did not wish to receive text messages about jobs that were available. Further, he told the "work alert automated system" to please not contact him anymore. Dec Gary¶ 5 These violations by the Defendant constitute a willful and knowing violation of the TCPA.

Plaintiff desired to work because of his financial situation; however, Defendant TLP strongly discouraged clients to call in to find jobs, and further discouraged clients from visiting local branches to inquire about work. Plaintiff consistently visited the branches surrounding Detroit looking for work…The Defendants would discourage this action done by the Plaintiff…The Defendants routinely makes potential workers use the automated system ("work alert") or they would be suspended or fired and not able to provide for a living.

Finally, each of the 5,600 text messages received on Plaintiffs cellphone did not include the necessary opt-out language…i.e Stop or Quit that the FCC ruled must

be included in each message. The Cellular Telecommunications Industry Association (CTIA) which governs short codes requires all messages to display opt-out key words. Even if the Defendants TLP claim that Plaintiff opted in to receive 60 messages a month (See Exhibit E), that total for an 11 month period would be a number of 660 text messages that Plaintiff agreed to receive. That would still leave Defendants TLP over the text message limit by 4,940. For these reasons, the Plaintiffs motion for summary judgement should be granted and treble damages awarded in favor of Plaintiff.

### III. THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA) 47 U.S.C §227

The TCPA regulates, inter alia, the use of automated telephone equipment, or "predictive-dialers", defined as equipment which "has the capacity... (a) to store or produce telephone numbers to be called, using a random or sequential number generator; and (b) to dial such numbers. 47 U.S.C. § 227(a)(1). Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of auto-dialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.[2]

The TCPA is a strict liability statute that awards $500 per each violation and up to $1,500 per willful violation. 47 U.S.C. § 227(b)(3)(B)(C). The TCPA also

encompasses text messages as calls and is considered a violation of the act.

Therefore, text messages are "calls" within the context of the TCPA.

See...Satterfield v. Simon & Schuster, Inc., 569 F.3d (9th Cir. 2009).

In particular, the TCPA makes it illegal:

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the caller (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party ) using any automatic telephone dialing system or an artificial or prerecorded voice—

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call[.]

47 U.S.C. § 227(b)(1)(A)(iii) (emphases added). Congress authorized a private right of action to enforce the Act. See 27 U.S.C. § 227(b)(3). Additionally, Congress directed the Federal Communications Commission ("FCC") to "prescribe regulations to implement the requirements of" the TCPA. See 47 U.S.C. § 227(b)(2).

The FCC has implemented and ruled that a consumer may revoke consent to be contacted on his cellphone by any reasonable means at any time. ***See...Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Declaratory Ruling and Order, FCC Rcd 7993- 7998, para 55-70, (2015)*** Further, that a consumer may revoke consent in any manner that

5

clearly expresses a desire not to receive further messages, and that callers may not infringe on that ability. ("[C]onsent is terminated when the actor knows or has reason to know that the other is no longer willing for him to continue the particular conduct.") *See* Restatement (Second) of Torts § 892A, cmt. i. (1979)

## IV. STATEMENT OF UNDISPUTED FACTS

On January 24, 2014 Plaintiff did not provide consent to be contacted on his cellphone. A representative named Sue, physically took Plaintiffs cellphone and opted in for him. Declaration of Kevin A. Gary (Dec¶ 4), Exhibit B, Plaintiffs Statement of Undisputed Facts (SUF) 1,

On September 17, 2016, Plaintiff asked the work alert system "twice", to not contact him anymore. Dec Gary¶ 5, SUF ¶ 2, Comp¶17, Dkt 1

On October 14, 2016, Plaintiff went into the local branch of Detroit, and talked to a representative named Maleeka, and asked her to remove him from the text message alert system. He stated that he wished to continue to work, but did not want to continue to receive the text messages. Dec Gary¶ 6, SUF ¶ 3

On December 6, 2016, Plaintiff again went into the local branch of Detroit and talked to a representative named Keely, and asked her to remove him from the text message alert system. He stated that he wished to continue to work, but did not want to continue to receive the text messages. Dec Gary¶ 7, SUF ¶ 4

6

On February 23rd and 26th, 2017, Plaintiff again text the work alert system on (4) four occasions and asked the system "to not contact him anymore". Dec Gary¶ 5, SUF ¶ 5  Additionally, Plaintiff called the Trenton Michigan office and talked to a representative and asked to be removed from the texting alert system. Dec Gary¶ 8, SUF ¶ 9

On February 22, 2017, @ 2141 Plaintiff received a letter from a representative named Katrina that stated the following:

**By legal request, opted Kevin Gary out of Work Alert by changing primary contact number to residence and setting best time to call field to Do Not Contact. K Bellizzi**

Dec Gary¶ 10, SUF ¶ 7, See (Exhibits F 1-2)

On February 22, 2017, @ 2226 Plaintiff received a letter from a representative named Katrina that stated the following:

**By legal request, opted Kevin Gary out of Work Alert by changing primary contact number to residence and setting best time to call field to Do Not Contact. K Bellizzi**

Dec Gary¶ 11, SUF ¶ 8 See (Exhibits F 1-2)

After texting the system to be removed from text alerts, and talking to the representative, Plaintiff continued to receive a plethora of text messages against his wishes up until August 2017. Dec Gary¶ 12, SUF ¶ 9

After revoking consent to be contacted on his cellphone, Plaintiff received over five-thousand-six-hundred (5,600) text messages. Dec Gary¶ 13, SUF ¶ 10

The Defendants TLP would discourage clients from visiting the local branches to inquire about work. The Defendants TLP routinely makes potential workers use the automated system ("work alert") or they would be suspended or fired and not able to provide for a living. Dec Gary ¶ 14, SUF ¶ 11

On several occasions the Plaintiff text to the automated system and was replied to in less than a second. Dec ¶ Gary 15, SUF 12

## V. ARGUMENT

### A. Legal Standard

Summary judgment is appropriate where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law" Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial" *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001) Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact. *Id.* If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which they have the burden of proof, the moving party is entitled to summary judgment *Id.*

Only disputes involving material facts are relevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. see… *Chicago Title Ins. Corp. v. Magnunson*, 487 F.3d 985, 995 (6th Cir. 2007). In order to demonstrate a genuine issue of material fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts…Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Moreover, if a party fails to plead sufficient facts to establish an element of its claim, no genuine issue material fact exists. *Chicago Title Ins.*, 487 F.3d at 995; *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992). If the nonmoving party is unable to provide evidence substantial enough for a factfinder to rely upon at trial which shows that a genuine issue exists as to a material fact, the motion must be granted. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249-250.

### B. Plaintiff Revoked Consent To Be Contacted On His Cellphone

Plaintiff never provided consent to be contacted on his cellphone. A representative named Sue physically took Plaintiffs cellphone and opted in for him. This act not only goes against previous FCC rulings, but it also is a violation of the

Defendants own rules. (Productions, Exhibit G, p1) In relevant part it states to Defendants own staff workers:

**Caution…According to federal law, workers must Opt-in on their own efforts- you can direct them, but they must perform the actions themselves.**

Plaintiff never opted in to receive text messages! The facts of this record show that Plaintiff not only texted the work alert system that he did not want to be contacted anymore, the record also reflects that Plaintiff called into the offices and further went in personally to inform the Defendants, that he did not want to be contacted via text messages on his cellphone. (SUF #5)

The FCC has ruled that a person has a right to opt-out – and companies cannot dictate how they do so. Further…the Order clarifies that a person may revoke consent through any reasonable method, including orally. Citing…*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Declaratory Ruling and Order, FCC Rcd 7993- 7998, (2015)*

The FCC and the 11th Circuit has ruled that consent can only come from the person that owns the phone. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 23 FCC Rcd 9779, para 10 (2008)* See also…Osorio v. State Farm Bank, FSB;' 746 F.3d 1242 (11th Cir. 2014) A Company should only get consent from that person.

The egregious violations of the TCPA constitute a willful and knowing violation of the statute. Based on the Defendant never gaining actual consent from the Plaintiff, Summary Judgement should be granted in the Plaintiffs favor.

*I. Informational Texts Are Covered By The TCPA*

Informational calls and texts messages are covered by the TCPA. The TCPA's restrictions on autodialed, artificial-voice, and prerecorded-voice calls to wireless numbers apply equally to telemarketing and informational calls. With the exception of calls made for emergency purposes or with the prior express consent of the called party, the TCPA broadly prohibits calls made using "any automatic telephone dialing system" to "any telephone number assigned to a . . . cellular telephone service" without limiting that restriction to telemarketing calls. . See…Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Declaratory Ruling and Order, para 123, FCC Rcd (2015.

The Defendants informational text messages are covered by the TCPA, and therefore, Plaintiff motion for Summary Judgement should be granted.

### C. The Defendants System "Work Alert" Qualifies As An Automated Dialer (ATDS) and Predictive Dialer

The Defendant system uses three entities to send out is outbound messages. The process uses Ellis Software, Work Alert, and Mblox…This process which

11

consist of: 1. A user opens up Ellis, and gathers messages to a group of messages to send (2) Using Ellis, this information is sent to work alert…work alert then sends the messages to another party named "Mblox" (3) Mblox then sends the messages to a list of qualified people in a matter of milliseconds. ( Request for Interrogatories #10, #12, Exhibit, H, p 1-2) The multiple entities use of computer software combined with hardware, constitute the Defendant's system as an ATDS and predictive dialer. The Defendants marketing company "Mblox" sends up 65 million text messages a month. (See Redacted Exhibit I, p 1-2)

The FCC has clarified that equipment can be deemed an autodialer if the net result of such voluntary combination enables the equipment to have the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers. The fact that several separate entities has voluntarily entered into an agreement to provide such functionality does not alter this analysis. The TCPA uses the word "system" to describe the automated dialing equipment that is defined in section 227(a)(1) of the Act.

The Commission noted, in concluding that a predictive dialer meets the definition of an autodialer, that "[t]he hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers." As a result, the Commission has recognized that various pieces of different equipment and software can be combined to form an autodialer, as contemplated by the TCPA.

The fact that these individual pieces of equipment and software might be separately owned does not change this analysis We also find that parties cannot circumvent the TCPA by dividing ownership of dialing equipment. ***See...Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Declaratory Ruling and Order, FCC Rcd 7971, 7972, para 23, 11 (2015)*** . We also find that callers cannot avoid obtaining consent by dividing ownership of pieces of dialing equipment that work in concert among multiple entities. ***Id at 10***

### I. Defendants TLP System Dials From A Set List Of Numbers

Defendants TLP admit that the system dials from a group of numbers called "smart group". See (Exhibit G, p 4-9) The FCC has clarified with specificity that the commission's stance on auto dialers or Predictive dialers has been reaffirmed from previous rulings. ***See...Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Declaratory Ruling and Order, FCC Rcd 7971, 7972, para 10, 11 (2015)*** "We reaffirm our previous statements that dialing equipment generally has the capacity to store or produce, and dial random or sequential numbers (and thus meets the TCPA's definition of "autodialer") **even if it is not presently** (emphasis added) used for that purpose, including when the caller is calling **a set list** of consumers. We also reiterate that predictive dialers, as previously described by the Commission, satisfy the TCPA's

13

definition of "autodialer" for the same reason". Thus, Plaintiff has produced evidence that presents a issue of material fact and Defendant's summary judgment must be denied.

### II. The Defendant Systems Operate Without Human Intervention

The Defendants system "work alert" operates without human intervention. Plaintiff text the work alert system and got an immediate response in less than a second. (See Exhibit E, p 1-2) The text messages were automated and no person was on the other end responding to the messages. Therefore, according to the FCC, at any time the system has the capacity to operate as an automated dialer, the system is covered by the TCPA. ***Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Declaratory Ruling and Order, FCC Rcd 7971, 7972, para 10, 11 (2015)*** The responses presented by the Plaintiffs *exhibits H* show and prove that no human could type a sentence in less than a second. The Defendants work alert system lacks human intervention to Plaintiffs text messages.

Accordingly, Summary Judgment should be granted in the Plaintiffs favor.

### VI. CONCLUSION

Plaintiff has overwhelmingly and conclusively established that: (1) Defendant TLP is responsible and controls the ability to send text messages, (2) Defendant

TLP work alert system as well as it marketing company Mblox sends messages from a "smart group" Platform which qualifies as an ATDS, (3) Valid consent was never provided by the Plaintiff, and whatever consent that the Defendants TLP thought they had, was revoked by the Plaintiff (4) Defendant exceeded the amount of texts messages per month by 4,950 over the 60 a month limit.

For the reasons stated above, Plaintiffs Motion for Summary Judgment should be granted and treble damages ($1500.00) awarded for each of the five-thousand-six-hundred (5,600) unwanted text messages received by the Plaintiff

Date: April 14th, 2018            Respectfully submitted

/s/Kevin A. Gary
3210 Hogarth
Detroit, MI 48206
kagary14@hotmail.com
Ph: 248-703-5173

## CERTIFICATE OF SERVICE

I hereby certify that on April 14th, 2018, I electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the Defendant's Counsel listed below:

**KUIPER ORLEBEKE PC**

**Scott W. Kraemer**

**180 Monroe Avenue, NW, Ste 400**

**Grand Rapids, MI, 49503**

**Phone: 616-454-3700**

**COUNSEL FOR DEFENDANT TRUE BLUE, INC., ET AL**

Plaintiff, Pro-Se