UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN A. GARY,

    Plaintiff,

    v.

TRUEBLUE, INC.,

    Defendant.

_____/

Case No. 17-cv-10544

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
ELIZABETH A. STAFFORD

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [20] AND GRANTING DEFENDANT'S MOTION TO COMPEL DEPOSITION TESTIMONY OF PLAINTIFF [34]

### I.    INTRODUCTION

On February 21, 2017, Plaintiff Kevin A. Gary filed suit against Defendant TrueBlue, Inc., d/b/a People Ready, Inc., d/b/a Labor Ready, Inc., alleging that Defendant used an automatic telephone dialing system ("ATDS") to send him thousands of text messages without his consent in negligent or willful and knowing violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Dkt. No. 1, pg. 2 (Pg. ID 2).

Plaintiff filed a summary judgment motion on April 14, 2018, more than a month before the May 21, 2018 discovery cutoff date. Dkt. No. 20. Defendant moved to extend the time to respond to Plaintiff's summary judgment motion, citing the need to depose Plaintiff. Dkt. No. 25, pg. 2 (Pg. ID 246). Notwithstanding its Motion

to Extend Response Time, Defendant responded to Plaintiff's summary judgment motion on May 7, 2018. Dkt. No. 30. And on May 8, 2018, the Court granted Defendant's motion to extend the deadline to respond. Dkt. No. 31.

Plaintiff sat for a deposition on May 11, 2018. *See* Dkt. No. 34, pg. 3 (Pg. ID 428). The deposition was unsatisfactory to the Defendant, as it moved on June 6, 2018 to compel deposition testimony from Plaintiff.[1] *See id.* In that motion, Defendant also requested attorney fees and sanctions. *See id.* On June 8, 2018, Plaintiff responded to the motion to compel. Dkt. No. 35. As of this writing, the Defendant has not submitted a reply in support of its motion to compel, and the time to do so has expired.

Presently before the Court is Plaintiff's Motion for Summary Judgment [20]. The motion is fully briefed. Also before the Court is Defendant's Motion to Compel Deposition Testimony of Plaintiff and for Attorney's Fees and Sanctions [34]. That motion is sufficiently briefed. The Court heard both motions on Tuesday, July 17, 2018 at 2:00 p.m. During that hearing, the Court DENIED Plaintiff's Motion for Summary Judgment [20], GRANTED Defendant's Motion to Compel Deposition Testimony [34], and DENIED Defendant's request for attorney's fees and sanctions

---

[1] Defendant then moved for summary judgment on June 21, 2018. Dkt. No. 38. The Court has held this motion in abeyance. Dkt. No. 39.

[34]. In this Opinion and Order, the Court will outline its reasoning for those decisions.

## II.  FACTUAL BACKGROUND

Plaintiff applied to join Labor Ready on July 7, 2011. Dkt. No. 30, pg. 7 (Pg. ID 311). Labor Ready, the predecessor to People Ready, is a staffing company that connects workers with short-term jobs. *Id.* at pg. 3 (Pg. ID 307). Seeking such employment opportunities, Plaintiff completed and signed the Labor Ready application form. Dkt. No. 30-3, pg. 1 (Pg. ID 335). The application form contained a provision entitled "Consent for Telephone Contact." *Id.* at pg. 2 (Pg. ID 336). That provision provided "express permission and consent" to Labor Ready to contact the applicant at the telephone number listed on the application, in order to alert them of potential job assignments. *Id.*

In addition to traditional in-person placement through its local branches, People Ready (and before it, Labor Ready) utilizes a text messaging platform, WorkAlert, as a method of connecting workers with job assignments. Defendant describes in detail the steps by which potential workers are alerted to new jobs through WorkAlert. Dkt. No. 30-1, pgs. 3–5 (Pg. ID 329–331). Branch employees search the People Ready database for workers in a specific geographic area with the requisite skills for a particular job. *Id.* at pg. 4 (Pg. ID 330). Branch employees can refine their search using several parameters, including whether a worker has checked

in with the branch or accepted a job within the last thirty days. *Id.* Employees can manually include or exclude specific persons from the resulting pool of potential workers. *Id.*

Once the desired group of workers is finalized, a branch employee then composes a text message that will be sent to the pool. *Id.* Defendant maintains that there are no "form" or pre-written text messages for this process; rather, an employee personally drafts each text message. *Id.* The messages contain only the information relevant to a specific employment opportunity. *See* Dkt. No. 30-4. Once a message is complete, a branch employee clicks "send" and the message is sent to a group of potential workers. *Id.* Defendant alleges that the WorkAlert system limits the total number of people that can be texted at a single time, but the Defendant has not specified that number. *Id.*

In her declaration in support of Defendant's Opposition to Summary Judgment, Cindi Knutson, the Director of Platform Solutions for TrueBlue, Inc., states that the WorkAlert system cannot send text messages without the above-described human direction, nor is it capable of randomly or sequentially dialing or texting workers. Dkt. No. 30-1, pg. 5 (Pg. ID 331). Defendant also maintains that there is no technology that could be added to the WorkAlert system that would allow it to text groups of workers automatically or without human intervention. *Id.*

Plaintiff asserts that the WorkAlert system has the capacity to send text messages without human intervention and to independently dial numbers from a set list. Dkt. No. 21, pgs. 13–14 (Pg. ID 85–86). He references occasions on which he would text the system and receive a reply instantaneously. *Id.* at pg. 8 (Pg. ID 80); *see, e.g.*, Dkt. No. 30-4, pg. 1 (Pg. ID 337, lns. 2–3). Plaintiff claims that the WorkAlert system dials a fixed set of numbers through the "Smart Group" and "Fixed Group" features. Dkt. No. 33, pgs. 9–10 (Pg. ID 391–392). Smart groups allow branch employees to save specific search parameters to easily search for workers that fit certain criteria. Dkt. No. 33-3, pg. 2 (Pg. ID 407). Fixed groups save a specific list of workers, and the list remains the same until manually changed. Dkt. No. 21-9, pg. 7 (Pg. ID 209).

Plaintiff concedes that he signed the application which included the "express consent" provision. Dkt. No. 33, pg. 12 (Pg. ID 394). He explains that he needed work, so he signed the application and accepted jobs through WorkAlert when he could. *Id.* Plaintiff maintains, however, that the text messages from WorkAlert became "overburdening," leading him to attempt to revoke his consent. Dkt. No. 34, pg. 26 (Pg. ID 451).

He alleges that the original written consent secured through his signature on the Labor Ready application from July 2011 expired in 2013. Dkt. No. 33, pg. 13 (Pg. ID 395). Plaintiff also asserts that he attempted to revoke his consent in person

at local branches, by calling branches and by replying to WorkAlert. Dkt. No. 21, pgs. 6–7 (Pg. ID 78–79). Plaintiff provides an excerpt from the text message log between himself and WorkAlert to show the instances where he replied to the system, asking not to be contacted. *Id.* at pg. 29 (Pg. ID 134, lns. 1883–1884); *see, e.g.*, Dkt. No. 21-5, pg. 28 (Pg. ID 133, lns. 1858, 1862). He offers a screenshot of what appears to be his profile in the WorkAlert system, displaying a notification that, on February 22, 2017, he revoked his consent by changing his "Best Time to Call" to "Do Not Contact." Dkt. No. 21-8, pg. 2 (Pg. ID 201).

Plaintiff continued to receive text messages, despite his alleged efforts to opt out of WorkAlert. Dkt. No. 21, pg. 7 (Pg. ID 79). He states that WorkAlert sent him at least 4,940 texts without his consent. Dkt. No. 33, pg.14 (Pg. ID 396); *see* Dkt. No. 21-5, pgs. 2–51 (Pg. ID 107–156).

Defendant disputes Plaintiff's assertions regarding revocation of consent. Defendant points to a text message log between the WorkAlert system and Plaintiff to highlight at least eight occasions on which Plaintiff opted into the WorkAlert system by texting "yes" or "start." Dkt. No. 30, pg. 12 (Pg. ID 316); *see* Dkt. No. 30-4; pgs. 1–30 (Pg. ID 337–366; lns. 2, 842–46, 1,236–37; 3,218–19, 4,008-09; 5,209; 5,232). On several of these occasions, Plaintiff texted "start" immediately after opting out of the WorkAlert system. *Id.* Defendant also asserts that the Plaintiff

manifested his consent by accepting hundreds of job offers through WorkAlert. Dkt. No. 30, pgs. 7–11 (Pg. ID 311–315); *see* Dkt. No. 30-5, pgs. 1–10 (Pg. ID 367–376).

Plaintiff claims that all but one of the texts sent from his phone to the WorkAlert system with the messages "yes" or "start" were sent, not by him, but by People Ready's branch employees. Dkt. No. 21, pgs. 6, 9 (Pg. ID 78, 81); *see* Dkt. No. 34, pgs. 39, 54–55, 58 (Pg. ID 464, 479–480, 483). During his deposition, Plaintiff vehemently maintained that when he visited local branches to inquire about work, branch employees requested his phone and then opted into the WorkAlert system, without his consent. *See, e.g.*, Dkt. No. 34, pgs. 39, 54–55 (Pg. ID 464, 479–480). When confronted with an opt in message that was sent after 11 p.m., Plaintiff conceded that he sent that message, but he still attributed the other opt in messages to branch employees. *Id.* at pg. 58 (Pg. ID 483).

Plaintiff also disputes that his acceptance of job offers through WorkAlert is a manifestation of his consent to receive text alerts. According to Plaintiff, he had no choice but to accept job offers through the WorkAlert system. He needed to work, and he claims that Defendant's employees routinely discouraged him from inquiring about job opportunities at the local branches, whether in person or through phone calls. Dkt. No. 21, pg. 3 (Pg. ID 75). According to Plaintiff, he consistently attempted to secure work through these alternative methods, and was strongly discouraged from doing so. *Id.* at pgs. 2–3 (Pg. ID 74–75). Throughout his deposition, Plaintiff

repeated that the only way to get a job with the Defendant is through WorkAlert. *See, e.g.*, Dkt. No. 34, pgs. 51, 55–56 (Pg. ID 476, 480–481).

Finally, Plaintiff notes that WorkAlert's "welcome" messages state that the system will send sixty messages a month to the user. Dkt. No. 33, pg. 13 (Pg. ID 395); Dkt. No. 21-7, pg. 2 (Pg. ID 198); *see, e.g.*, Dkt. No. 30-4, pg. 1 (Page ID 337, ln. 3). Yet Plaintiff received hundreds of messages per month. Dkt. No. 33, pg. 13 (Pg. ID 395); *see generally* Dkt. No. 30-4, pg. 1 (Pg. ID 337).

Defendant denies that its policy or employees prevent workers from seeking employment through means other than the WorkAlert system. Dkt. No. 30, pg. 11 (Pg. ID 315). Defendant claims that Plaintiff continued to secure job offers, even after he had opted out of WorkAlert (and was therefore not receiving text notifications). *Id.*; *see also* Dkt. No. 30-5, pg. 1 (Pg. ID 367). Defendant denies sending Plaintiff 5,600 text messages. Dkt. No. 30, pg. 12 (Pg. ID 316).

With respect to damages, Plaintiff claims that the texts he received used up the minutes in his phone plan and violated his privacy. Dkt. No. 21, pgs. 2–3 (Pg. ID 74–75); *see* Dkt. No. 21-12, pgs. 2–5 (Pg. ID 221–224). He also alleges that, because he repeatedly revoked his consent, Defendant's violations of the TCPA were willful and knowing, entitling him to treble damages under the statute. Dkt. No. 21, pg. 3 (Pg. ID 75). Defendant challenges the evidence presented by Plaintiff with

regard to his cell phone plan as unidentifiable and impossible to authenticate or understand. Dkt. No. 30, pgs. 2, 18 (Pg. ID 306, 322).

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) empowers a court to grant summary judgment if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1968). There is a genuine issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Mere allegations or denials in the non-movant's pleadings will not suffice, nor will a mere scintilla of evidence which supports the non-moving party. *Id.* at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *Id.* at 252.

## IV. DISCUSSION

Plaintiff brought this suit asserting violations of the TCPA, and moved for summary judgment on his claim on April 14, 2018. Dkt. No. 20. Additionally, the Defendant has moved to compel the Plaintiff to sit for a deposition. Dkt. No. 34.

For the reasons that follow, the Court will deny Plaintiff's Motion for Summary Judgment, and will grant Defendant's Motion to Compel. Dkt. Nos. 20, 34. The Court will first address Plaintiff's summary judgment motion.

A.     Plaintiff's Motion for Summary Judgment [20]

Plaintiff alleges that Defendant sent thousands of text messages to his cellular phone in violation of the TCPA, 47 U.S.C. § 227. But the Court concludes that reasonable jurors could disagree about whether the Defendant violated the TCPA, and therefore, the Court will deny Plaintiff's summary judgment motion.

To state a TCPA claim for calls made to a cellular phone,[2] a plaintiff must establish that: (1) a call was placed to a cellular or wireless phone, (2) by using an automatic dialing system or by leaving an artificial or pre-recorded message, and (3) without prior consent of the recipient-plaintiff. *Duchene v. OnStar, LLC*, No. 15-13337, 2016 U.S. Dist. LEXIS 97129, at *4–5 (E.D. Mich. July 26, 2016) (citing 47 U.S.C. § 227(b)(1)(A)). The Act authorizes a private right of action and plaintiffs may recover at least $500 in damages for each call made (or text message sent) in violation of the statute, and up to treble damages for each "willful or knowing" violation. 47 U.S.C. § 227(b)(3).

---

[2] Text messages are considered "calls" under the TCPA. *See In re Rules & Regulations Implementing the TCPA of 1991*, 27 FCC Rcd 15391, 15392 (2012).

Plaintiff alleges that the WorkAlert system qualifies as an autodialer; that consent to contact him on his cell phone—initially provided on his Labor Ready application—expired in 2013; that he later attempted to revoke his consent on numerous occasions; and that Defendant violated the TCPA knowingly and willfully, entitling Plaintiff to treble damages.

As recent developments in courts' construction of the TCPA impact this litigation, the Court will discuss these developments before addressing the merits of Plaintiff's claim.

1.     State of the TCPA

Congress enacted the TCPA in 1991 based on findings that the "use of the telephone to market goods and services to the home and other businesses" had become "pervasive due to the increased use of cost-effective telemarketing techniques." 47 U.S.C. § 227 note, Pub. L. No. 102-243, § 2(1), 105 Stat. 2394, 2394. "Many consumers," Congress determined, "[were] outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers." *Id.* § 2(6)–(7).

The TCPA delegates authority to the Federal Communications Commission ("FCC") to "prescribe regulations to implement the requirements of this subsection." *Id.* at § 227(b)(2). The Hobbs Act, 28 U.S.C. § 2342(1), and the Federal Communications Act, 47 U. S. C. § 402(a), operate together to vest jurisdiction to

enjoin, set aside, annul or suspend FCC regulations exclusively in the United States Court of Appeals (excluding the Court of Appeals for the Federal Circuit). *Luna v. Shac*, 122 F. Supp. 3d 936, 938–939 (N.D. Cal. 2015). Thus, "the Hobbs Act jurisdictionally divests district courts from ignoring FCC rulings interpreting the TCPA." *Id.*

Since the TCPA was enacted in 1991, the FCC has issued a series of orders and rulings prescribing regulations in furtherance of the Act. *See, e.g.*, *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 2003 FCC LEXIS 3673 (June 26, 2003) [hereinafter *2003 Order*]; *In re Rules Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd 559 (F.C.C. Dec. 28, 2007) [hereinafter *2008 Ruling*]. Some of these orders are contentious or vague, and thus, successive orders have reiterated, confirmed, or clarified previous FCC orders and decisions. *See, e.g.*, 2008 Ruling, 23 FCC Rcd 559.

In March of 2018, the D.C. Court of Appeals vacated parts of the FCC's 2015 order. *See ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018). Most relevant to the instant case, the court set aside the FCC's broad understanding of the term "capacity" (as that word is used in the definition of an autodialer in 47 U.S.C. § 227(a)(1)), as well as the order's descriptions of the functions a device must perform to qualify as an autodialer. *Id.* at 703. The *ACA Int'l* decision is indicative of the unsettled and contradictory nature of the FCC's orders and the case law on these issues.

The D.C. Circuit ruling is binding in the Ninth Circuit, and Sixth Circuit authority suggests that it is binding on this Court as well. First, the Ninth Circuit held that, when challenges to agency regulations in more than one federal court of appeals are consolidated and assigned to a single circuit court, the resulting decision is binding outside of that circuit. *See Peck v. Cingular Wireless, LLC*, 535 F.3d 1053, 1057 (9th Cir. 2008). And in *ACA Int'l*, eleven petitions for review of the 2015 FCC Order were consolidated in the D.C. Circuit Court of Appeals. *See Herrick v. GoDaddy.com LLC*, No. CV-16-00254-PHX-DJH, 2018 U.S. Dist. LEXIS 83744, at *9 n.4 (D. Ariz. May 14, 2018).[3] District courts in the Ninth Circuit, of course, have followed *ACA Int'l. See Marshall v. CBE Grp., Inc.*, No. 2:16-cv-02406-GMN-NJK, 2018 U.S. Dist. LEXIS 55223, at *12 n.4 (D. Nev. Mar. 30, 2018) ("[T]he D.C. Circuit's decision is binding on the Court . . . ."); *see also Herrick*, 2018 U.S. Dist. LEXIS 83744, at *17 ("[T]his Court will not defer to any of the FCC's 'pertinent pronouncements' regarding the first required function of an ATDS.").

No Sixth Circuit case has a holding analogous to *Peck*. Yet the Sixth Circuit has cited *Peck* as persuasive authority, noting that its "result makes sense in light of the procedural mechanism Congress has provided for challenging agency rules." *Sandusky Wellness Ctr., Ltd. Liab. Co. v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 467 (6th Cir. 2017). In *Sandusky*, the Sixth Circuit held that another FCC

---

[3] The petitions originated in the Seventh Circuit and the D.C. Circuit. *See id.*

regulation (the Solicited Fax Rule) was no longer valid because it had been struck down by the D.C. Circuit. *Id.*

This suggests that *ACA Int'l*, which set aside the FCC's clarifications of the types of equipment that qualify as an ATDS, renders those aspects of the 2015 FCC Order invalid and not binding on this Court. Pursuant to *Sandusky*, the Sixth Circuit has likely adopted the logic set out in *Peck*.

But the Court need not decide whether *ACA Int'l* is binding here, as the Plaintiff will not prevail under any potentially applicable TCPA standard. First, under *ACA Int'l*, the Plaintiff has not proved that all reasonable persons would conclude that the Defendant has violated the TCPA. And second, Plaintiff has failed to make this showing under the now-vacated FCC orders, which offer Plaintiff the most expansive and favorable construction of the TCPA. Therefore, the Court will deny Plaintiff's summary judgment motion.

### 2. Merits of Plaintiff's TCPA Claim

Plaintiff alleges that Defendant violated the TCPA by using an ATDS to text his cellphone without his consent. Plaintiff claims that the WorkAlert system Defendant uses to contact potential workers like Plaintiff is an ATDS. He also asserts that Defendant lacked consent to contact him because the written consent from his Labor Ready application expired in 2013. Alternatively, Plaintiff argues that he repeatedly revoked his consent to be contacted. Plaintiff alleges that Defendant's

violations were knowing and willful, entitling Plaintiff to treble damages. The Court disagrees and will therefore deny Plaintiff's summary judgment motion.

Because the threshold issue is whether the WorkAlert system is an autodialer, the Court will first discuss that issue.

a)      WorkAlert as an ATDS

The TCPA defines an ATDS as equipment which "has the capacity (1) to store or produce telephone numbers to be called, using a random or sequential number generator; and (2) to dial such numbers." 47 U.S.C. § 227(a)(1)(A)–(B). In 2008, 2012, and 2015, the FCC issued orders stating that an ATDS may include equipment that automatically dials numbers from a stored list without human intervention, even when the equipment lacks the capacity to store or produce telephone numbers using a random or sequential number generator. *See Sterk v. Path, Inc.*, 46 F. Supp. 3d 813, 818 (N.D. Ill. 2014). The FCC has emphasized the importance of human intervention (or lack thereof) in determining whether equipment is an autodialer. *See, e.g.*, 2003 FCC LEXIS 3673, at *205 (F.C.C. June 26, 2003). As discussed below, the D.C. Circuit Court of Appeals has vacated these regulations. *ACA Int'l*, 885 F.3d 687.

Plaintiff argues that WorkAlert is an ATDS because WorkAlert can both (1) dial numbers from a set list (through the "smart" or "fixed" group functions) and (2) reply to text messages instantaneously without human intervention. Yet the Court

finds that Plaintiff fails to establish that these characteristics make the system an ATDS as a matter of law.

> b)      Dialing from a Set List

Plaintiff asserts that when a branch employee sends a text message to a group of potential workers using a "fixed group," WorkAlert is dialing a set list of numbers in violation of the TCPA. *See* 30 FCC Rcd 7961, 7974 (F.C.C. July 10, 2015). When a branch employee runs a search of the worker database to find persons who fit criteria relevant to a particular job assignment, the employee can save the resulting list of workers in a fixed group. Dkt. No. 21-9, pg. 7 (Pg. ID 209). When another job opportunity requires the same criteria, the branch employee can simply pull up the fixed group instead of running a new search. *Id.*

Plaintiff claims that when WorkAlert sends a text message using a fixed group, it is dialing from a set list of numbers, thus making it an autodialer pursuant to the FCC's 2003 and 2015 orders. Dkt. No. 33, pg. 9 (Pg. ID 391). The Court finds that this argument lacks merit.

To begin, the relevant portion of the 2015 FCC Order was vacated in *ACA Int'l*, and so that order no longer binds this Court. *See ACA Int'l*, 885 F.3d at 703 ("[T]he Commission's ruling, in describing the functions a device must perform to qualify as an autodialer, fails to satisfy the requirement of reasoned decisonmaking."). Specifically, the *ACA Int'l* court found that the FCC 2015 order

supported two competing interpretations of an autodialer. *Id.* On the one hand, the 2015 order indicated that to qualify as an ATDS, a device must be able to generate and dial random or sequential numbers. *Id.* at 702.

On the other hand, the order reaffirmed the Commission's previous rulings, which supported a conflicting position: that a device can be considered an autodialer even if it can only dial numbers from an externally supplied list. *Id.* The D.C. Circuit held that "the Commission cannot . . . espouse both competing interpretations in the same order." *Id.* at 703. Applying *ACA Int'l*, the FCC's rulings—including the ATDS definition which covered equipment that can only dial numbers from a set list—are no longer valid. *See Sandusky*, 863 F.3d 460.

Because the *ACA Int'l* decision vacated the FCC's orders regarding the definition of an ATDS, the Court must examine the statutory language. *See Marshall*, 2018 U.S. Dist. LEXIS 55223, at *12 ("[T]he Court will not stray from the statute's language . . . ."); *see also Herrick*, 2018 U.S. Dist. LEXIS 83744, at *19 (noting and adhering to the "more limited" statutory definition of an ATDS).

The Act defines an ATDS as "equipment which has the capacity—to store or produce numbers to be called, using a random or sequential number generator." 47 U.S.C. § 227. The statute never mentions a capacity to dial from a set list. Plaintiff does not allege that WorkAlert has the capacity to store or produce numbers using a

number generator,[4] and nothing in the record could support such a claim. Therefore, adhering to the plain language of the TCPA and viewing the facts in the light most favorable to the Defendant, the Court finds that WorkAlert does not qualify as an ATDS as a matter of law.

But even if the Court were to follow the FCC's now-vacated and broad classification of an ATDS, Plaintiff fails to show that WorkAlert is an ATDS as a matter of law. An autodialer, as defined by the relevant FCC orders, must have the capacity to dial from a set list without human intervention: "the Commission has also long held that the basic functions of an autodialer are to dial numbers without human intervention . . . ." 30 FCC Rcd 7961, 7975 (F.C.C. July 10, 2015) (internal quotation marks omitted); *see also Glauser v. GroupMe, Inc.*, 2015 U.S. Dist. LEXIS 14001, at *17 (N.D. Cal. Feb. 4, 2015) (citing FCC's 2008 and 2012 TCPA orders and concluding that "while the capacity for random/sequential dialing is not required for TCPA liability, the capacity to dial numbers without human intervention is required."). Plaintiff offers no evidence that WorkAlert sends job offer text messages without human intervention.

---

[4] The 2015 FCC Order interpreted "capacity" to include a device's potential functionalities, and the D.C. Circuit vacated this interpretation as unreasonably expansive. *See ACA Int'l*, 885 F.3d at 700. Therefore, to determine whether WorkAlert meets the definition of an ATDS, this Court will consider only the functions that WorkAlert is currently able to perform.

Conversely, Defendant provides evidence that WorkAlert requires multiple steps of human intervention to send a job notification text. Dkt. No. 30-1, pgs. 3–5 (Pg. ID 329–331). Even when using a fixed group, branch employees must manually edit the list of workers to fit a particular job assignment, craft an outgoing text message, and then click certain keys to send a message. *Id.* This level of human judgment and intervention precludes a system from falling under the definition of an ATDS. *See, e.g.*, *Smith v. Stellar Recovery, Inc.*, No. 15-cv-11717, 2017 U.S. Dist. LEXIS 35658, at *15–16 (E.D. Mich. Feb. 7, 2017) (holding equipment that cannot dial numbers without agents initiating the call is not an autodialer); *see also Marshall*, 2018 U.S. Dist. LEXIS 55223, at *17–18 (collecting cases).

Viewing the evidence in the light most favorable to the Defendant, the record does not demonstrate that the WorkAlert system is an ATDS as a matter of law because it sends text messages to a set list. To the contrary, Defendant has provided evidence that the texts WorkAlert sends to potential workers require human intervention, preventing the system from qualifying as an ATDS.

c) Automated Text Messages

Plaintiff argues that the WorkAlert system qualifies as an ATDS because it can automatically send texts in response to certain action words sent to the system, like "start," "help," or "stop." Dkt. No. 33, pg. 11 (Pg. ID 393). The text message log between Plaintiff and WorkAlert contains examples of these automated

responses; WorkAlert's reply arrives within a second of its receipt of a message with a trigger word.[5] *See, e.g.*, Dkt. No. 30-4, pg. 1 (Pg. ID. 337). According to the Plaintiff, these automated texts prove that WorkAlert has the capacity to send messages without human intervention and so qualifies as an ATDS.

Although WorkAlert sends automatic responses when a user opts in, opts out, or asks for help, reasonable jurors could disagree on whether that qualifies the system as an ATDS. The statutory definition of an ATDS contains the word "automatic." However, that definition also requires that the equipment "store or produce numbers to be called, using a random or sequential number generator." 47 U.S.C. § 227(a)(1). Plaintiff provides no evidence that WorkAlert has that capacity.

The FCC has stressed the importance of human intervention in evaluating whether a system is an autodialer, but the Commission has eschewed a per se "human intervention test." 30 FCC Rcd 7961, 7976 (F.C.C. July 10, 2015). Instead, the FCC promotes a "case-by-case determination" which considers "how the equipment functions and depends on human intervention." *Id.* at 7975. In a 2012 declaratory ruling, the FCC could have decided whether automated opt out text messages qualify a sending system as an ATDS. *In re Rules & Regulations Implementing the TCPA*

---

[5] The Defendant refers to this confirmation text as an "automatic opt out response." Dkt. No. 30, pg. 10 (Pg. ID 314).

*of 1991*, 27 FCC Rcd 15391, 15393 (F.C.C. Nov. 29, 2012). Yet the FCC declined to rule on that issue and decided the matter on other grounds. *Id.* at 15398 (holding that consumer had provided express consent to receive the messages).

Here, the disputed texts confirm a user's opt into or opt out of WorkAlert, and such messages are generally not actionable under the TCPA. Indeed, "a one-time text message sent immediately after a consumer's request for the text does not violate the TCPA and our rules." 30 FCC Rcd 7961, 8015 (2015). When considering an opt out confirmation text, courts have held that the text was not actionable under the TCPA because the plaintiff's own text precipitated the confirmation message. *See Derby v. AOL, Inc.*, No. 15-cv-00452-RMW, 2015 U.S. Dist. LEXIS 70719, at *20 (N.D. Cal. June 1, 2015). The FCC permits these types of confirmation messages as good public policy because the consumer initiates the text exchange and the messages relay information that the consumer has requested. *See* 30 FCC Rcd 7961 at 8015–8016 (2015).

Viewing the facts and making all reasonable inferences in favor of the Defendant, the Court concludes that Plaintiff has not shown that all reasonable people would conclude that the automated confirmation texts establish the WorkAlert system as an autodialer. Thus, Plaintiff is not entitled to summary judgment.

### 3. Prior Express Consent

The Court will deny Plaintiff's Motion for Summary Judgment because Plaintiff fails to establish that the WorkAlert system is an ATDS as a matter of law. Whether a device is an ATDS is the threshold issue for establishing this TCPA claim. Therefore, the Court will analyze the element of consent operating under the assumption that WorkAlert is an ATDS.

Because there is also a genuine dispute of material fact as to whether Plaintiff provided his consent to be texted through WorkAlert, the Court will deny summary judgment on that basis as well.

#### a) Plaintiff's LaborReady Application

To violate the TCPA, an autodialed call must be made without the prior express consent of the consumer. 47 U.S.C. § 227(b)(1)(A). The seller bears the burden of demonstrating that it obtained unambiguous consent. 27 FCC Rcd 1830, 1844 (F.C.C. Feb. 15, 2012) ("2012 Order").

Plaintiff concedes that, in 2011, when he signed up for Labor Ready, he provided his express written consent to be contacted on his telephone by signing a Labor Ready application that contained a "Consent to be Contacted" provision. Dkt. No. 33, pgs. 12–13 (Pg. ID 394–395). However, Plaintiff argues that this consent expired in 2013, after the FCC revised its regulations pertaining to "express written consent" for telemarketing calls. *See* 27 FCC Rcd at 1844 (2012). The changes to

consent requirements in the 2012 Order applied only to telemarketing calls, not informational calls or other calls made for noncommercial purposes. *Id.* at 1841. Consent for informational calls may be obtained orally or in writing, and it need not conform to the 2012 Order's revised standards. *Id.* Because a genuine dispute exists as to whether Defendant's employment opportunity texts constitute telemarketing, Plaintiff is not entitled to summary judgment.

In 2012, the FCC revised its rules regarding prior express consent for telemarketing calls. The Commission held that to secure valid consent, "telemarketers must tell consumers the telemarketing will be done with autodialer equipment and that consent is not a condition of purchase." 30 FCC Rcd 7961, 8012–8013 (F.C.C. July 10, 2015) (explaining 2012 Order). The Commission also held that, after October 16, 2013, companies could not rely on *prior* express written consent if it did not conform to the new standards. *Id.* at 8014.

In 2015, however, the Commission acknowledged that the 2012 Order was ambiguous as to the validity of consent obtained before this rule change. *Id.* So the Commission held that companies could rely on "old" consent for eighty-nine days following the July 10, 2015 release of that ruling. *Id.* at 8015. The 2011 Labor Ready application that Plaintiff signed did not comply with the rule change; it did not advise Plaintiff that he would be contacted by an ATDS. Dkt. No. 30-3, pg. 2 (Pg. ID 336).

Thus, if Defendant's texts are telemarketing, Plaintiff's written consent expired eighty-nine days after July 10, 2015.

The Court, however, agrees with the Defendant that the employment opportunity texts it sent to Plaintiff do not qualify as telemarketing as a matter of law. Dkt. No. 30, pg. 13 (Pg. ID 317). Defendant also persuasively argues that applying the TCPA to these communications would go against both common sense and the purpose of the TCPA. *Id.* at pg. 14 (Pg. ID 318).

The TCPA defines the term "telephone solicitation" as a call made for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services. 47 U.S.C. § 227(a)(4). The FCC commented on what constitutes an advertisement in a 2003 Order:

> The TCPA's definition does not require a sale to be made during the call in order for the message to be considered an advertisement. Offers for free goods or services that are part of an overall marketing campaign to sell property, goods, or services constitute "advertising the commercial availability or quality of any property, goods, or services."

2003 FCC LEXIS 3673, at *224 (F.C.C. June 26, 2003).

Here, Defendant's texts inform potential workers about employment opportunities. They do not advertise a product. However, the text messages are sent for a commercial purpose. Defendant's business and profits are derived from workers receiving these messages and accepting jobs through the messages. A genuine dispute of material fact exists as to whether Defendant's messages

constitute telemarketing. Thus, the Court cannot hold as a matter of law that the Defendant is subject to the FCC's 2012 rule revisions regarding prior express consent. Consequently, the Court also cannot conclude that the consent Plaintiff provided in his 2011 Labor Ready application is invalid. Therefore, the Court will deny Plaintiff's summary judgment motion.

### b) Revocation of Consent

According to the Plaintiff, even if the consent provided in the 2011 application did not expire, he repeatedly revoked consent to be contacted through WorkAlert. Dkt. No. 21, pgs. 6–7 (Pg. ID 78–79). Plaintiff always provided his consent again after revoking it, the Defendant contends. The Court finds that the Defendant's argument has merit, and therefore, that a genuine dispute of material fact exists on this issue as well.

A consumer may revoke consent "at any time and through any reasonable means" including orally or in writing. 30 FCC Rcd 7961, 7989, 7990, 7996 (F.C.C. July 10, 2015); *see also ACA Int'l*, 885 F.3d at 692.

Plaintiff claims that he revoked consent in text messages, phone calls, and in person at local branches. Dkt. No. 21, pgs. 6–7 (Pg. ID 78–79). The text message log between Plaintiff and WorkAlert contains at least six instances of the Plaintiff revoking consent through a text message to WorkAlert. Dkt. No. 30-4, pgs. 11, 16 (Pg. ID 347, 352). Plaintiff also submitted what appears to be a screenshot of his

profile in WorkAlert, showing that he requested to not be contacted. Dkt. No. 21-8, pg. 2 (Pg. ID 201). Plaintiff testified that he called and visited local branches to revoke his consent to be contacted through WorkAlert. Dkt. No. 34, pg. 40 (Pg. ID 465).

Defendant does not dispute that Plaintiff revoked his consent on several occasions. Dkt. No. 30, pgs. 9–10 (Pg. ID 313–314). However, Defendant responds that Plaintiff always "opted back into" the WorkAlert system after revoking his consent. *Id.* The text message log supports this contention. Several interactions follow the same basic form: an opt out text message from Plaintiff, an automated text from WorkAlert confirming the opt out, a "start" message from Plaintiff, and an automated text from WorkAlert confirming the reactivation of the system. Dkt. No. 30-4, pg. 16 (Pg. ID 352). At least once, a "start" message from Plaintiff immediately followed a message from WorkAlert confirming his opt out. *Id.*

Plaintiff claims that he did not send the messages from his phone opting back into WorkAlert. Both in his motion and his deposition, Plaintiff maintained that those opt in messages were sent by Defendant's employees at local branches. Dkt. No. 21, pg. 6 (Pg. ID 78); *see, e.g.*, Dkt. No. 34, pg. 51 (Pg. ID 476). According to Plaintiff, he would go into the local branches to ask Defendant's employees how he might opt out of WorkAlert but still inquire about job opportunities. *Id.* The employees would then take his phone and opt him back into the WorkAlert system,

Plaintiff says. *Id.* Plaintiff alleges that Defendant's employees sent all but one of the "opt in" text messages reflected in the log. Dkt. No. 34, pg. 58 (Pg. ID 483). Defendant denies these allegations, asserting that such actions are against Defendant's policies. Dkt. No. 30, pg. 12 (Pg. ID 316); *see also* Dkt. No. 21-9, pg. 3 (Pg. ID 205).

The Court concludes that Plaintiff revoked his consent several times, but there is a genuine dispute regarding whether Plaintiff subsequently consented to receiving notifications through WorkAlert. Accordingly, the Plaintiff is not entitled to summary judgment.

c) Consent Valid for Only Sixty Messages a Month

Plaintiff argues that his consent was limited to sixty messages per month, regardless of whether he had consented to receiving text message notifications about job opportunities through WorkAlert. Dkt. No. 33, pg. 14 (Pg. ID 396). Defendant argues that Plaintiff continually manifested his consent by accepting job offers through WorkAlert. Because Plaintiff has not shown that all reasonable persons would conclude that his consent was limited to sixty messages a month, the Court will deny his motion for summary judgment.

Plaintiff points to the "welcome" message from WorkAlert to support the argument that his consent extended to only sixty messages per month. *Id.* When users opt into WorkAlert, they receive an automated welcome message in

confirmation. That message reads, in relevant part: "60 msg/mo msg and data rates may apply." Dkt. No. 30-4, pg. 1 (Pg. ID 337). Plaintiff argues that this phrase outlines the scope of his consent, and any messages he received over that limit were outside of his consent, and thus violations of the TCPA.

Defendant acknowledges that it sent Plaintiff hundreds of text messages a month. *See id.* Yet it disputes the assertion that Plaintiff's consent was limited to sixty messages a month. Defendant argues that Plaintiff repeatedly provided his consent to receive job offers via text message, by accepting and working jobs. Dkt. No. 30, pg. 16 (Pg. ID 320). To support its contention, Defendant convincingly points to *Baisden v. Credit Adjustments, Inc.*, 813 F.3d. 338 (6th Cir. 2016).

The court in *Baisden* held that there is no one way to provide consent for debt collection calls, and based its holding on a 2015 FCC order. *Id.* at 343. The 2015 order stated that, for non-telemarketing calls, there is no specific method by which a caller must obtain prior express consent, and the scope of that consent is contingent on the facts of each situation. 30 FCC Rcd. 7961, 7990 (2015). Thus, for *Baisden* to apply to the instant case, the messages the Defendant sent must not constitute telemarketing. As discussed above, there is a genuine dispute of material fact on this issue.

If Defendant's text messages constitute telemarketing, the stringent consent requirements outlined in the 2012 FCC Order apply. Those rules require

telemarketers to unambiguously describe the calls that the consumer is consenting to receive. *See* 27 FCC Rcd 1830, 1844 (2012). If Defendant's text messages are not a form of telemarketing, the more lenient consent provisions outlined in *Baisden* may apply. Because a reasonable person could conclude that the Defendant's text messages are not telemarketing, the Court will deny Plaintiff's summary judgment motion.

### 4.    Damages

Plaintiff asserts that he is entitled to treble damages because Defendant knowingly and willfully violated the TCPA. Dkt. No. 21, pg. 15 (Pg. ID 87). The TCPA provides treble damages for knowing and willful violations of its terms. 47 U.S.C. § 227(b)(3). However, "a willful or knowing violation of the TCPA requires that Plaintiff has to [prove] that Defendant was made aware of/notified that Plaintiff did not consent to calls from Defendant." *Duchene v. OnStar, LLC*, No. 15-13337, 2016 U.S. Dist. LEXIS 97129, at *19 (E.D. Mich. July 26, 2016). Because there is a genuine dispute of material fact regarding whether Plaintiff consented to receive text messages from Defendant, the Plaintiff is not entitled to summary judgment.

### B.    Defendant's Motion to Compel and Attorney's Fees [34]

Defendant filed a Motion to Compel Plaintiff's Deposition Testimony and requested attorney's fees to be incurred if it re-deposes Plaintiff, as the Plaintiff was purportedly uncooperative during his deposition. Dkt. No. 34, pg. 3 (Pg. ID 428).

The Court finds good cause for granting Defendant's Motion to Compel Plaintiff's Deposition Testimony. The Court, however, will reject Defendant's request for attorney's fees.

During his deposition, Plaintiff refused to authenticate his signature and to answer entire categories of pedestrian questions, including questions about his background. Dkt. No. 34, pg. 18 (Pg. ID 443). He would not disclose the names of Defendant's employees who allegedly informed him that he was not allowed at a branch office. *Id.* at pg. 45 (Pg. ID 470). Plaintiff also evasively answered questions about basic facts regarding his claim, including if he had permitted Defendant's employees to opt him into WorkAlert and whether he believed that he had been contacted by automated message. Dkt. No. 34, pgs. 50, 55 (Pg. ID 475, 480).

Plaintiff's testimony is critical in this case. *See* Dkt. No. 31, pg. 2 (Pg. ID 379). Therefore, the Court will grant the Motion to Compel Plaintiff's Deposition Testimony. Dkt. No. 34.

Defendant requests that the Court impose on Plaintiff the fees associated with a second deposition. Plaintiff is *pro se*, but Defendant argues that he has experience with litigation. *Id.* at pg. 7 (Pg. ID 432). Although this may be true, this was Plaintiff's first deposition and he may not understand the rules of discovery. *See id.* at pg. 16 (Pg. ID 441). Thus, the Court determines that there is not good cause to

grant Defendant's request for attorney's fees and sanctions. Accordingly, the Court will deny Defendant's request for attorney's fees and sanctions.

## V. CONCLUSION

The Plaintiff has moved for summary judgment in this matter. Dkt. No. 20. Additionally, the Defendant has requested that the Court compel the Plaintiff's deposition testimony and has asked for attorney fees and costs associated with any later deposition. Dkt. No. 34. While on the record, and for the reasons discussed herein, the Court DENIED Plaintiff's Motion for Summary Judgment [20], GRANTED Defendant's Motion to Compel Plaintiff's Deposition Testimony [34], and rejected Defendant's request for attorney's fees and sanctions [34].

IT IS SO ORDERED.

Dated: August 1, 2018                              /s/Gershwin A. Drain
                                                   GERSHWIN A. DRAIN
                                                   United States District Judge


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 1, 2018, by electronic and/or ordinary mail.
/s/ Tanya Bankston
Deputy Clerk