UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN A. GARY,

Plaintiff,

v.

TRUEBLUE, INC., ET AL.,

Defendants.
_____/

Case No. 17-cv-10544

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
ELIZABETH A. STAFFORD

**OPINION AND ORDER GRANTING DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT [#49]**

**I. INTRODUCTION**

Plaintiff Kevin Gary initiated this action against Defendants TrueBlue, Inc. (d/b/a People Ready, Inc. and Labor Ready, Inc.) on February 17, 2017. Dkt. No. 1. In his Complaint, Plaintiff alleged Defendants used prohibited equipment to send him over one-thousand text messages, in violation of 47 U.S.C. § 227(b)(1)(A)(iii), otherwise known as the Telephone Consumer Protection Act ("TCPA"). *Id.* at pp. 6-7 (Pg. ID 6-7).

On June 21, 2018, Defendants filed a Motion for Summary Judgment. Dkt. No. 38. With leave from the Court, Defendants filed a Second Motion for Summary Judgment on August 28, 2018. Dkt. No. 49. Plaintiff filed a Response on September 4, 2018. Dkt. No. 50. Defendants filed a Reply on September 18,

-1-

2018. Dkt. No. 52. The Court heard oral argument on October 10, 2018. Dkt. No. 54.

Present before the Court is Defendants' Second Motion for Summary Judgment [#49]. For the reasons set forth below, the Court will GRANT Defendants' Motion.

## II. BACKGROUND

People Ready, the successor entity of Labor Ready, is a staffing company that helps place unemployed blue-collar workers with job opportunities in the local community. Dkt. 49-1, p. 2 (Pg. ID 744). Traditionally, workers would arrive at the labor hall around 5:00 a.m. each morning to see whether there was any work available, and jobs would be assigned on a first-come, first-served basis. *Id.* at p. 3 (Pg. ID 745). Today, People Ready uses a messaging platform called WorkAlert to inform workers about potential jobs via text message. *Id.* Hence, workers no longer need to come into the office to learn about job opportunities. *Id.*

If a People Ready branch employee opts to use WorkAlert to fill an open position, the first step in placing a worker with a customer is for the employee to manually open the WorkAlert web browser application on their desktop computer and enter their log-in credentials. *Id.* at p. 4 (Pg. ID 746). Next, the branch employee is directed to the "work search" screen, where they must input criteria to search for potential workers. *Id.* at pp. 4-5 (Pg. ID 746-47). The branch employee

then hits the "search" button, which returns a list of potential workers to whom the branch employee can consider sending a text message. *Id.* at p. 5 (Pg. ID 747). Once the branch employee is satisfied with the pool of potential workers, the employee will manually compose a text message that will go out to the workers who have opted into the WorkAlert program. *Id.*

According to Defendants' Director of Platform Solutions -- Cindi Knutson -- there is no way to send a text message through the WorkAlert system without the several steps of human intervention described above. *Id.* at p. 6 (Pg. ID 748). Even more, WorkAlert lacks the capability to randomly or sequentially text potential workers. *Id.*

Plaintiff applied to join Labor Ready on July 7, 2011. Dkt. No. 49-2, p. 6-7 (Pg. ID 754-55). When he did so, Plaintiff completed and signed an application form that contained a provision entitled, "Consent for Telephone Contact." *Id.* at p. 7 (Pg. ID 755). That provision stated, "I give Labor Ready my express permission and consent to call my phone number that I provided on my employment application for the sole purpose of alerting me to new job opportunities at Labor Ready." *Id.*

Since joining Labor Ready, Plaintiff asserts he has received over 5,600 text messages from Defendants through the WorkAlert system. Dkt. No. 50, p. 7 (Pg. ID 945). Plaintiff further asserts that on several occasions he revoked his consent

to continue receiving those text messages. *Id.* In fact, on September 17, 2016, February 23, 2017, and February 26, 2017, Plaintiff texted the WorkAlert system, "Please don't contact me anymore." *See* Dkt. No. 50-4. In addition, Plaintiff has two documents from Defendants' branch employee -- Kristina Bellizzi -- dated February 22, 2017, indicating a request that Plaintiff be opted out of receiving messages through the WorkAlert system. *See* Dkt. No. 50-8. Despite this, Plaintiff has continued to receive text messages from WorkAlert. *See* Dkt. No. 50-5, pp. 29-51 (Pg. ID 1002-24); Dkt. No. 50-6. At the same time, it appears that Plaintiff opted back in to receiving text messages and continued to accept jobs via WorkAlert. *See id.*

Through the discovery process, Plaintiff learned that Defendants' WorkAlert system acts in conjunction with a third-party aggregator called mBlox. Dkt. No. 50, p. 7 (Pg. ID 945). According to Defendants, "Text messages leave Work Alert, go to mBlox (SMS provider) and are then sent to each worker's wireless carrier to be delivered to the individual's cell phone." Dkt. No. 50-9, p. 2 (Pg. ID 1072). Plaintiff now claims that mBlox is a fully-automated-text-messaging system regulated by the TCPA. *See* Dkt. No. 50, p. 7 (Pg. ID 945). And because Defendants' WorkAlert system acts in conjunction with mBlox, Plaintiff suggests Defendants' text messages violate section 227(b)(1)(A)(iii) of the TCPA. *See id.*

## III. Legal Standard

Federal Rule of Civil Procedure 56(c) empowers a court to grant summary judgment if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1968). There is a genuine issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Mere allegations or denials in the non-movant's pleadings will not suffice, nor will a mere scintilla of evidence supporting the non-moving party. *Id.* at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *Id.* at 252.

## IV. Discussion

### A. The Telephone Consumer Protection Act

Congress enacted the TCPA in response to consumer complaints about unwanted calls and text messages from telemarketers. *ACA Int'l v. FCC*, 885 F.3d 687, 691 (D.C. Cir. 2018). The TCPA, in relevant part, prohibits any person from using an automatic telephone dialing system to make a call or send a text message to another person without that person's consent. *See* 42 U.S.C. § 227(b)(1)(A)(iii);

*Keating v. Peterson's Nelnet, LLC*, 615 Fed. Appx. 365, 370 (6th Cir. 2015). Under the Act, an automatic telephone dialing system is defined as equipment with the "capacity" (1) to store or produce telephone numbers to be called, using a random or sequential number generator, and (2) to dial such numbers. 42 U.S.C. § 227(a)(1).

Congress delegated authority to the Federal Communications Commission ("FCC") to prescribe regulations enforcing the TCPA. *See* 42 U.S.C. § 227(b)(2). Since then, the FCC has issued a series of orders and rulings. *See e.g.*, *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014 (F.C.C. July 3, 2003); *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 559 (F.C.C. Jan. 4, 2008); *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961 (F.C.C. July 20, 2015) (hereinafter "2015 Ruling").

Relevant to the case at hand, the FCC's 2015 Ruling sought to clarify two open questions: (1) what did it mean for a telephone system to have the "capacity" to perform the autodial functions enumerated in section 227(a)(1) of the TCPA; and (2) what did those functions entail? *See* 2015 Ruling, 30 FCC Rcd. at 7974-75. First, the FCC determined that the term "capacity" referred not only to a system's present capabilities, but also to its "potential functionalities." 2015 Ruling, 30 FCC Rcd. at 7974. Second, the FCC noted that dialing equipment

could store or produce, and dial random or sequential numbers, and that this included calling from a set list. *Id.* at 7971-72. Further, the FCC reaffirmed that a basic function of an autodialer is having the ability to dial thousands of numbers in a short period of time without human intervention. *Id.* at 7975. But the FCC failed to clarify whether a system that did require human intervention could still qualify as an automatic telephone dialing system. *See id.*

Faced with confusion, the D.C. Circuit recently set aside the above portions of the FCC's decision. *See ACA Int'l*, 885 F.3d at 692; 28 U.S.C. § 2342(1) ("The court of appeals . . . has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of – all final orders of the Federal Communications Commission."). The D.C. Circuit held:

> The order's lack of clarity about which functions qualify a device as an autodialer compounds the unreasonableness of the Commission's expansive understanding of when a device has the "capacity" to perform the necessary functions. We must therefore set aside the Commission's treatment of those matters.

*ACA International*, 885 F.3d at 703.

In *ACA International*, eleven petitions for review of the FCC's 2015 Ruling were consolidated in the D.C. Circuit. Sixth Circuit case law suggests that this makes the D.C. Circuit's decision to set aside the 2015 Ruling binding on this Court. Indeed, in *Sandusky Wellness Center, LLC v. ASD Specialty Healthcare, Inc.*, the Sixth Circuit recognized that once the Multidistrict Litigation Panel

assigned petitions challenging an FCC rule to the D.C. Circuit, that court became the sole forum for addressing the validity of the rule.  *See* 863 F.3d 460, 467 (6th Cir. 2017) (citing *Peck v. Cingular Wireless, LLC*, 535 F.3d 1053, 1057 (9th Cir. 2008)).  The same should hold true here.

In short, because of the D.C. Circuit's holding in *ACA International*, this Court need not defer to the FCC's understanding of the capacity and functions of an autodialer under the TCPA.  *See Keyes v. Ocwen Loan Servicing, LLC*, 2018 WL 3914707, at *6 (E.D. Mich. Aug. 16, 2018) (holding this Court need not defer to the FCC's declarations regarding the capacity and functions of an automatic telephone dialing system).  Since the *ACA International* decision, there has been no Sixth Circuit case law interpreting the definition of an autodialer.  Therefore, the Court must look to the plain language of the statute to resolve the pending motion.  *See Marshall v. CBE Grp., Inc.*, 2018 WL 1567852, at *5 (D. Nev. Mar. 30, 2018) (holding in light of the *ACA International* decision, the court will not stray from the statutory language of the TCPA).

**B. Defendants' Motion for Summary Judgment**

Here, Defendants have moved for summary judgment raising four arguments. Dkt. No. 49.  First, Defendants argue summary judgment is warranted because the TCPA does not prohibit the texting of employee-benefitting job offers. *See* Dkt. No. 49, p. 19 (Pg. ID 734).  Second, Defendants argue its WorkAlert

system is not an automatic telephone dialing system as defined by the plain language of the TCPA. *See id.* at p. 21 (Pg. ID 736). Third, Defendants argue WorkAlert is not an automatic telephone dialing system under the FCC's now vacated understanding of the TCPA because the system requires several steps of human intervention to send text messages. *See id.* at p. 24 (Pg. ID 739). Finally, Defendants argue Plaintiff consented to its text messages, thus establishing a complete defense. *See id.* at p. 26 (Pg. ID 741).

Here, the Court agrees that Defendants' WorkAlert system does not qualify as an automatic telephone dialing system under the plain language of the TCPA. Accordingly, Defendants are entitled to summary judgment.

1. <u>Defendants are Entitled to Summary Judgment because there is no Evidence that its WorkAlert System is an Automatic Telephone Dialing System as Defined by the TCPA.</u>

Through the discovery process, Plaintiff learned, "Text messages leave Work Alert, go to mBlox (SMS provider) and are then sent to each worker's wireless carrier to be delivered to the individual's cell phone." *See* Dkt. No. 50-9. Hence, Plaintiff no longer asserts Defendants' WorkAlert system by itself qualifies as an automatic telephone dialing system. *See* Dkt. No. 50, p. 7 (Pg. ID. 945). Instead, he argues Defendants combine its system with a third-party aggregator -- mBlox -- whose equipment is fully automated. *See id.* This combination, Plaintiff suggests, makes Defendants liable under the TCPA. *See id.* In support, Plaintiff

cites to the FCC's 2015 Ruling where the Commission held, "parties cannot circumvent the TCPA by dividing ownership of dialing equipment." *See id.* at p. 10 (Pg. ID 948); 2015 Ruling, 30 FCC Rcd. at 7977.[1] But despite this ruling, Plaintiff fails to demonstrate that WorkAlert, when combined with mBlox, has the capacity to randomly or sequentially dial or text phone numbers.

    a. <u>There is no Evidence that WorkAlert and/or mBlox can Store or Produce Numbers to be Called, Using a Random or Sequential Number Generator.</u>

To qualify as an automated telephone dialing system under the TCPA, a piece of equipment must have the capacity to (1) store or produce telephone numbers to be called, using a random or sequential number generator, and (2) dial such numbers. 42 U.S.C. § 227(a)(1).

Here, Defendants presented an affidavit from its Director of Platform Solutions stating WorkAlert lacks the capability to randomly or sequentially dial or text potential workers. *See* Dkt. 49-1, p. 6 (Pg. ID 748). Still, Plaintiff claims Defendants' third-party aggregate, mBlox, has this capacity because mBlox uses programs such as "Java API, XML, and SMPP servers." *See* Dkt. No. 50, p. 9 (Pg. ID 947). However, Plaintiff's evidence in support of this claim is lacking.

---

[1] This portion of the FCC's 2015 Ruling was not set aside in *ACA International*.

Plaintiff first offers a document titled, "Technical Specifications." Dkt. No. 50-10, p. 2 (Pg. ID 1074). The document, among other things, contains the following text box:

| Feature: | Supported: | Additional Information: |
|---|---|---|
| API Options | √ | Java API, XML, or SMPP |

*Id.* Plaintiff contends that this document shows mBlox uses Java API, XML, and SMPP. Dkt. No. 50, p. 9 (Pg. ID 947).

Next, Plaintiff attempts -- unsuccessfully -- to explain Java API and SMPP through a series of documents he obtained from the Internet. For example, Plaintiff offers an excerpt of an article from dzone.com titled, "Random Number Generation in Java." Dkt. No. 50-12. Plaintiff provides no additional commentary on this article, and therefore, asks the Court to make the inferential leap that this document proves mBlox can randomly generate and text phone numbers.

In addition, Plaintiff offers a document from quora.com titled, "How do SMPP server works?" Dkt. No. 50-11, p. 3 (Pg. ID 1081). Remarkably, this document comes from an Internet forum where, it appears, anyone with an Internet connection can log on and answer posted questions. *See id.* Plaintiff provides no information about who these individuals on the forum are or the basis for their

knowledge.  Moreover, Plaintiff specifically directs the Court's attention to a user's answer that reads: "SMPP is an application layer protocol, [w]hich is used in telecom industry to message transfer."  However, even if true, this in no way demonstrates that mBlox has the capacity to randomly or sequentially dial or text phone numbers.

As Defendants correctly note, Plaintiff had the opportunity to add mBlox as a co-defendant, conduct discovery to see how mBlox interacts with Defendants' WorkAlert system, and even obtain evidence directly from mBlox to see how these Java API and SMPP programs operate within its system.  *See* Dkt. No. 52, p. 6 (Pg. ID 1098).  Plaintiff did none of these things.  In contrast, Defendants have presented evidence that WorkAlert lacks the capability to randomly or sequentially dial or send text messages.  *See* Dkt. 49-1, p. 6 (Pg. ID 748).  Hence, even viewing all the evidence in a light most favorable to Plaintiff, no reasonable juror could decide in Plaintiff's favor on this issue.

> b. <u>WorkAlert and/or mBlox are not Automatic Telephone Dialing Systems Irrespective of Whether they have Automated Functions.</u>

In a now vacated portion of its 2015 Ruling, the FCC reaffirmed that basic functions of an autodialer are to "dial numbers without human intervention" and "dial thousands of numbers in a short period of time."  2015 Ruling, 30 FCC Rcd. at 7975.  Keying on this language, Plaintiff raises three arguments.

First, Plaintiff argues that WorkAlert can operate without human intervention because its third-party aggregate, mBlox, allegedly uses a program called "Auto Retry" that resends undelivered text messages for up to a seventy-two-hour period. Dkt. No. 50, p. 9 (Pg. ID 947). Second, Plaintiff argues WorkAlert and/or mBlox can operate without human intervention because he received text messages about job opportunities when Defendants' branch office was closed. *Id.* Finally, Plaintiff argues WorkAlert and/or mBlox can operate without human intervention because he has received immediate responses from the system in less than a second. *See* Dkt. No. 50, p. 15 (Pg. ID 953). Specifically, Plaintiff references two occasions where he received automated opt-out messages from WorkAlert. *See* Dkt. No. 50-7.

With respect to this last argument, the Court has already held that automatic opt-out text messages are generally not actionable under the TCPA. *See* Dkt. No. 45, p. 21 (Pg. ID 697) (citing 2015 Ruling, 30 FCC Rcd. at 8015). Indeed:

> A one-time text sent in response to a consumer's request for information does not violate the TCPA or the Commission's rules so long as it: (1) is requested by the consumer; (2) is a one-time only message sent immediately in response to a specific consumer request; and (3) contains only the information requested by the consumer with no other marketing or advertising information.

2015 Ruling, 30 FCC Rcd. at 8016. But more to the point, the plain language of the TCPA does not prohibit the use of devices with automated functions. *See* 42 U.S.C. § 227(a)(1). Instead, the statute requires a showing that the system has the

capacity to randomly or sequentially dial or text phone numbers. *See id.* Here, Plaintiff has not made such a showing.

    c. <u>That WorkAlert and/or mBlox Operate via a Web Browser does not make these Systems Automatic Telephone Dialing Systems Under the TCPA.</u>

The *ACA International* did not set aside the FCC's 2015 Ruling in its entirety. In one portion of the Ruling that remains good authority today, the FCC stated: "The equipment used to originate Internet-to-phone text messages to wireless numbers via email or via a wireless carrier's web portal is an 'automatic telephone dialing system' as defined in the TCPA." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 8018 (F.C.C. July 20, 2015). The FCC reasoned, "the equipment used to send these messages . . . must necessarily store, or at least have the capacity to store, large volumes of numbers to be called." *Id.* Further, "Even assuming that the equipment does not actually use a random or sequential number generator, the capacity to do so would make it subject to the TCPA." *Id.* at 8019.

From this, Plaintiff argues that because WorkAlert sends messages through a web browser, this is a categorical violation of the TCPA. *See* Dkt. No. 50, p. 13-14 (Pg. ID 951-52). The Court will disagree. While there is no Sixth Circuit case law addressing this issue, the Northern District of Illinois squarely rejected this argument in *Blow v. Bijora, Inc.* 191 F. Supp. 3d 780, 788-89 (N.D. Ill. 2016).

At issue in *Blow* was whether the defendant violated the TCPA by using a software-based messaging transmission platform to send its customers text messages. *Id.* at 782-83. There, it was undisputed that sending a text through the messaging platform required multiple steps of human intervention. *See id.* at 783. For example, the defendant's employees had to manually log in to the system, enter the phone number(s), and draft the text message. *Id.* Still, the plaintiff argued that the FCC's 2015 Ruling established automatic liability under the TCPA for any person using an Internet-to-phone messaging platform. *Id.* at 788. The district court disagreed. *Id.* at 788-89.

The district court emphasized, "While the 2015 FCC Order expanded the definition of an ATDS, the Order did not make a blanket proclamation that all internet-to-phone platforms are autodialers categorically. Instead, the FCC explicitly stated that whether a particular piece of equipment was an ATDS was a 'case-by-case determination.'" *Id.* Ultimately, the district court concluded that the defendant did not violate the TCPA because there was no evidence that the messaging platform had the capacity to store or generate numbers -- whether randomly, sequentially, or from a defined list -- on its own, and without human intervention. *Id.* at 789. This Court finds *Blow* persuasive.

Here, like in *Blow*, there is no evidence in the record that WorkAlert and/or mBlox has the capacity to randomly or sequentially text numbers, as required by

the plain language of the TCPA. *See id.* To the contrary, Defendants' Director of Platform Solutions explicitly stated that WorkAlert lacks this capability. *See* Dkt. No. 49-1, p. 6 (Pg. ID 748). Hence, Defendants' use of these web-based messaging platforms does not automatically violate the statute.

This conclusion is consistent with the overall framework of the *ACA International* decision. 885 F.3d 387. Indeed, it appears that the FCC's 2015 Ruling presumed Internet-to-text messaging platforms could be automatic telephone dialing systems under the TCPA because they have the potential "capacity" to use a random or sequential number generator. *See* 2015 Ruling, 30 FCC Rcd. at 8018-19. But in *ACA International*, the D.C. Circuit explicitly set aside the FCC's expansive definition of the term "capacity." 885 F.3d at 703. Instead, the D.C. Circuit emphasized:

> the question whether equipment has the "capacity" to perform functions of an ATDS ultimately turns less on labels such as "present" and "potential" and more on considerations such as how much is required to enable the device to function as an autodialer.

*Id.* at 696. Here, there is simply no evidence in the record demonstrating WorkAlert and/or mBlox either has or could have this capacity.

Moreover, it is unclear that WorkAlert and/or mBlox are even the type of Internet-to-phone text messaging platforms contemplated by the FCC's 2015 Ruling. *See* 2015 Ruling, 30 FCC Rcd. at 8018-19 (finding the equipment at issue stores and produces the wireless telephone numbers to be called, and it does so

using random or sequential number generators to populate potential domain name addresses); *Derby v. AOL, Inc.*, 2015 WL 5316403, at *5 (N.D. Cal. Sept. 11, 2015) (holding such a system involves messages that originate as electronic mail (e-mail) and are sent to a combination of the recipient's unique telephone number and the wireless provider's domain name). Here, there is simply no evidence in the record showing WorkAlert and/or mBlox can operate in this manner. Accordingly, Defendants are entitled to summary judgment.

2. <u>Because there is no Evidence that Defendants' WorkAlert System or its Third-Party Aggregate are Automatic Telephone Dialing Systems Under the TCPA, Defendants' Remaining Arguments are Immaterial.</u>

Defendants raised a total of four arguments in support of its summary judgment motion. The Court agreed that WorkAlert and/or mBlox are not automatic telephone dialing systems as defined by the plain language of the TCPA. Hence, it is not necessary to reach the merits of Defendants' remaining arguments.

### V. CONCLUSION

For the reasons discussed herein, the Court will GRANT Defendants' Second Motion for Summary Judgment [#49].

IT IS SO ORDERED.


Dated: October 11, 2018

        s/Gershwin A. Drain
        HON. GERSHWIN A. DRAIN
        United States District Court Judge

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, October 11, 2018, by electronic and/or ordinary mail.

                                                <u>s/Teresa McGovern</u>
                                                Case Manager Generalist